IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE TRANMAN, INC., ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 3:11-cv-1046-M |
| | § | |
| BRUCE E. GRIFFIN, ET AL., | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs The Tranman, Inc. ("Tranman") and OLM, Inc. ("OLM") have filed a joint Motion for Summary Judgment with respect to all of their claims and causes of action as well as all of Defendants' affirmative defenses and counterclaims. For the reasons stated herein, Plaintiffs' Motion for Summary Judgment [Dkt. No. 25] is GRANTED in part and DENIED in part.

## Background

Plaintiffs own and operate several transmission repair stores in and around Dallas County, Texas under the assumed name "The Transmission Shop." Plaintiffs also jointly operated the website www.thetransmissionshop.com. Defendant Bruce Griffin ("Griffin") worked for Plaintiffs as a salesman from 2008 until his termination on or about April 29, 2011. During his employment, Griffin's job responsibilities included soliciting other automotive repair companies for the purpose of entering into referral contracts with Tranman and OLM. Plaintiffs provided Griffin with a truck to use in the course of fulfilling his job responsibilities.

Plaintiffs contend that, shortly before his termination, Griffin and Defendant Craig Fenderson ("Fenderson") began their own automotive repair business called Coyote Engines and Transmissions ("Coyote Engines") and created the website www.coyoteengines.com for the purpose of promoting their new business. Griffin also allegedly began promoting Coyote Engines to Plaintiffs' clients and business partners while using Plaintiffs' truck.

After Griffin's termination, Plaintiffs discovered the following statements about them on Yahoo!, which were apparently posted by a user with the screen name "Bobbo":

> Had them do a rebuild for me, less then a month had to bring it back for a leak and loose bolts. One year and a week after it was rebuilt and 5k miles it came apart and they would not touch it. Will never let them touch any of my cars. They are Awful.
>
> * * *
>
> I have the 2001 Dodge that broke down in Jackson Tennessee you would not pay for the tow and I could not get a trailer big enough for my truck to get it back to you so I had to shell out 3k for a rebuild to get out of Tennessee and they wanted 500 for the core. You where Zero help remember me now?
>
> * * *
>
> I called you personaly and you did nothing you mealy mouth. I shelled out 3k already for a rebuilt trans and the tranny you rebuilt went back as a core. I dont need your help now I needed it when I was stuck in Tennessee. No campaign, just the facts.
>
> * * *

-2-

You have no intention of helping me with my bill you had your chance to do that and all I got was hot air. So stop dismissing me as a way to justify your problems.

* * *

You run your business with as much ignorance as your comments. You are clueless and looking at your other comments you gave your shop a five star and two other local Transmission shops one star each. Explains everything you use other shops to do rebuilds for you, your word is worth nothing. I would recommend a rebuild from a company with a nation wide warranty not a shade tree outfit like this one.

* * *

I see you deleted your other reviews, I guess you did not want people seeing you as the liar you are. Your word is not worth the time of day. Enough said

* * *

You think your slick playing games, deleteing all your posts. Talk about bogus, I talked to you personaly and you did nothing to help me. People can see through your sharade.

Plaintiffs also discovered the following statements on Google posted by users with screen names "the-transmission-shop.com" and "the transmission shop sucks":

Coyote Engines and Transmissions would like to extend our thanks to The Transmission Shop owner Mike Adams for giving us the inspiration for starting our new website domain http://www.the-transmission-shop.com . After Mike fired and refused to pay his No. 1 Salesman in the United States we were extremely happy to pick him up as we know he will continue to make us ungodly amounts of money. Because Mike has harassed us over the phone and made threats it just gives us more fuel to sell more transmissions in the Dallas - Fort Worth metroplex. Hats off to you Mike for all you've done.

* * *

> The transmission shop has the worst service I have seen. Stay away from this company. I have heard nothing good about them at all. Mike Adams (the owner) has the worst reputation in all of Dallas. BEWARE – STAY AWAY FROM THIS COMPANY.

> * * *

> I noticed that this business has 8 complaints with the BBB that have the same generic "The consumer failed to acknowledge acceptance to BBB.". This seems to be very fishy. I find the A+ rating very unreliable

Plaintiffs filed suit against Defendants on May 19, 2011 asserting claims for defamation, business disparagement, breach of fiduciary duty, conversion, and violations of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). Defendants, through counsel, answered, raising various affirmative defenses and asserting counterclaims for tortious interference with prospective business relations, breach of contract, quantum meruit, theft of services, and an accounting. Thereafter, the Court granted Defendants' attorneys permission to withdraw as counsel for Defendants. Order [Dkt. No. 24], 9/22/11. On December 30, 2011, Plaintiffs' counsel mailed Plaintiffs' First Set of Requests for Admission to Defendants by certified mail and first class mail. The certified letters were returned "Unclaimed." The first class letters were not returned. Defendants did not respond. Therefore, each matter for which an admission was sought was deemed admitted by operation of law. *See* Order [Dkt. No. 28], 7/3/2012.

Plaintiffs filed their Motion for Summary Judgment on June 29, 2012. Defendants were ordered to file a response to the Motion by August 3, 2012 but failed

to do so. The Court therefore considers Plaintiffs' Motion for Summary Judgment without the benefit of a response. *See* Order [Dkt. No. 30], 10/29/12.

### Legal standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual

controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case

necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Analysis

Deemed Admissions

Plaintiffs contend that Defendants have admitted "each and every one" of their Requests for Admission and, therefore, they are entitled to summary judgment on all of their claims and all of Defendants' affirmative defenses and counterclaims. Plf. MSJ Br. [Dkt. No. 25] at 1.

Federal Rule of Civil Procedure 36 allows a party to request from any other party admissions to a broad range of factual matters, including the application of law to fact. FED. R. CIV. P. 36(a)(1); *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001). Under the rule, a party served with a request for admission has 30 days to answer or object to the request. FED. R. CIV. P. 36(a)(3). If a party fails to timely respond, the matter is deemed admitted and is "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." FED. R. CIV. P. 36(b). If the request for admission concerns an essential issue, the failure to respond to the request can result in a grant of summary judgment against the non-responding party. *See Carney*, 258 F.3d at 420 n.6 (collecting cases that grant summary judgment on basis of deemed admissions).

On December 30, 2011, Plaintiffs served Griffin and Fenderson with separate requests for admissions by certified mail and first class mail.[1] Plf. MSJ App. [Dkt. No. 26] at 2, ¶¶ 3, 9; *see also id.* at 6, 39, 41, 75. Neither Defendant filed an answer or any objections to the requests, nor did they make any effort to avoid the consequences of their failure to timely respond by moving to amend or withdraw the admissions. The matters to which the requests are directed are thus deemed admitted as a matter of

---

[1] Pursuant to Federal Rule of Civil Procedure 5(b)(2)(C), service by mail is complete on mailing. The *pro se* Defendants' failure or refusal to claim the packages served by certified mail does not change the fact that service was duly made. *See Hall v. ADVO, Inc.*, No. 3:04-CV-2644-L, 2007 WL 210357, at *2 (N.D. Tex. Jan. 26, 2007) (requests for admission deemed admitted when requests were sent to *pro se* party by certified mail, notwithstanding fact that documents were returned to sender as "unclaimed").

law. *See Carney*, 258 F.3d at 420; *see also Hill v. Breazeale*, 197 F. App'x 331, 336 (5th Cir. 2006) (applying Rule 36 against *pro se* litigant).

<u>Defamation and Business Disparagement</u>

To prevail on their defamation claim, Plaintiffs must establish "beyond peradventure" that Defendants published a statement about Plaintiffs that was defamatory, while acting with at least negligence regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). A statement is defamatory if it tends to damage the reputation of another by subjecting that person to public hatred, contempt, or ridicule. *Hansen v. Our Redeemer Lutheran Church*, 938 S.W.2d 85, 92 (Tex. App. – Dallas 1995, writ denied).

To prevail on their similar, but distinct, claim for business disparagement, Plaintiffs must prove that Defendants published a false, defamatory statement of fact about Plaintiffs, with malice, without privilege, that resulted in special damages to Plaintiffs. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). Defendants may be held liable for business disparagement only if the evidence establishes that they "knew of the falsity [of the statement] or acted with reckless disregard concerning it, or if [they] acted with ill will or intended to interfere in the economic interest of [Plaintiffs] in an unprivileged fashion." *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1987). Proof of special damages is also an essential part of Plaintiffs' cause of action for business disparagement. *See id.* Plaintiffs must show that the disparaging communication played a substantial part in inducing

third parties not to deal with Plaintiffs, resulting in a direct pecuniary loss that has been realized or liquidated, such as specific lost sales, loss of trade, or loss of other dealings. *See id.*

Defendants have admitted to posting the false review about Plaintiffs on Yahoo! using the screen name "Bobbo" and to making the three additional false statements about Plaintiffs on Google using the screen names "the-transmission-shop.com" and/or "the transmission shop sucks." Plf. MSJ App. at 12-20, Griffin Adm. Nos. 1, 9, 17, & 25; *id.* at 47-55, Fenderson Adm. Nos. 1, 9, 17, & 25. With respect to each statement, Defendants also have specifically admitted (1) they wrote and published the statement; (2) the statement was made about Plaintiffs; (3) the statement is entirely false; (4) they knew the statement was false when they wrote it; (5) the statement contains assertions of fact; (6) the statement defamed and disparaged Plaintiffs; and (7) the statement injured Plaintiffs and Plaintiffs' reputation. *Id.* at 12-22, Griffin Adm. Nos. 1-7, 9-15, 17-23, & 25-31; *id.* at 47-57, Fenderson Adm. Nos. 1-7, 9-15, 17-23, & 25-31. Considering these admissions and Defendants' failure to respond to Plaintiffs' Motion for Summary Judgment, the Court finds no genuine issue of material fact as to whether Defendants are liable for defamation. Plaintiffs are thus entitled to summary judgment on their defamation claim.

The Court comes to the opposite conclusion, however, with respect to Plaintiffs' claim for business disparagement. Plaintiffs have not established beyond peradventure that they suffered special damages as a result of any of Defendants' statements. In particular, there are no deemed admissions or any other evidence that any disparaging

communication by Defendants played a substantial part in inducing third parties not to deal with Plaintiffs, resulting in a direct pecuniary loss that has been realized or liquidated. *See Hurlbut*, 749 S.W.2d at 767. There is no evidence that Plaintiffs lost any specific sale, trade, or other dealing. Plaintiffs thus have not met their heavy burden to establish beyond peradventure all of the essential elements of their claim and are not entitled to summary judgment on their business disparagement claim.

Violation of the Anitcybersquatting Consumer Protection Act

In order to prevail on their ACPA claim, Plaintiffs must prove that: (1) their marks, "The Transmission Shop" and "www.transmissionshop.com," are distinctive or famous and entitled to protection; (2) Defendants' domain name is identical or confusingly similar to Plaintiffs' marks; and (3) Defendants registered the domain name with the bad faith intent to profit from it. 15 U.S.C. § 1125(d)(1)(A)[2]; *Southern*

---

[2] The relevant portion of the ACPA provides:

A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person--

(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that--

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or

-11-

*Co. v. Dauben Inc.,* 324 F. App'x 309, 314 (5th Cir. 2009) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)). In this case, although Defendants have admitted to registering a domain name – "www.the-transmission-shop.com" – that is confusingly similar to Plaintiffs' marks with a bad faith intent to profit from those marks (Plf. MSJ App. at 22-23, Griffin Adm. Nos. 33-38; *id.* at 57-58, Fenderson Adm. Nos. 33-38), the record contains insufficient evidence to establish that Plaintiffs' marks are distinctive or famous as a matter of law.

In determining if a mark is distinctive under the ACPA, a court may consider (1) the degree of inherent or acquired distinctiveness of the mark; (2) the duration and extent of use of the mark; (3) the duration and extent of advertising and publicity of the mark; (4) the geographical extent of the area in which the mark is used; (5) the channels of trade for which the goods or services with which the mark is used; (6) the degree of recognition of the mark in the trading areas and channels of trade used by the mark's owner and the person against whom the injunction is sought; (7) the nature and extent of use of the same or similar marks by third parties; and (8) whether the mark is registered. *See Registral.com, LLC v. Fisher Controls Intern., Inc.,* No. H-01-1423, 2001 WL 34109376, *8 (S.D. Tex. Jun. 28, 2001) (*citing Shields,* 254 F.3d at 482); *Sporty's Farm L.L.C. v. Sportman's Market, Inc.*, 202 F.3d 489, 497 n. 10 (2d Cir.

---

confusingly similar to or dilutive of that mark; or

(III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A).

2000)); *see also* 15 U.S.C. § 1125(c)(2) ("In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including ... (i) [t]he duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) [t]he amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) [t]he extent of actual recognition of the mark; (iv) [w]hether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.").

The only evidence in the summary judgment record that informs the Court's analysis of Plaintiffs' marks' distinctiveness are Defendants' admissions that Plaintiffs use their marks "in commerce throughout the State of Texas," Plf. MSJ App. at 22, Griffin Adm. No. 33; *id.* at 57, Fenderson Adm. No. 33, and that Plaintiffs "have a valid registration for the assumed name 'The Transmission Shop' in the State of Texas," *id.* at 22, Griffin Adm. No. 34; *id.* at 57, Fenderson Adm. No. 34. Although this evidence touches on the extent of Plaintiffs' use of their marks, it falls short of establishing that the marks are distinctive. Therefore, Plaintiffs have failed to establish "beyond peradventure" an essential element of their claim for violations of the ACPA, and their motion for summary judgment will be denied as to this claim.

Breach of Fiduciary Duties and Aiding and Abetting Breach of Fiduciary Duties

The elements of the breach of fiduciary duty claim against Griffin are: (1) a fiduciary relationship between Plaintiffs and Griffin; (2) breach of the fiduciary duty by Griffin; and (3) injury to Plaintiffs or benefit to Griffin resulting from the breach.

*See Anderton v. Cawley*, 378 S.W.3d 38, 51 (Tex. App. – Dallas 2012, no pet.). Under Texas law, an employee may owe fiduciary duties to his employer when the employee has been placed in a position of peculiar confidence or trust toward the employer. *See Hewlett-Packard Co. v. Byd:Sign, Inc.*, No. 6:05-cv-456, 2007 WL 275476, at *7 (E.D. Tex. Jan. 25, 2007) (collecting representative decisions). In particular, an employee may owe fiduciary duties to his employer when he acts as the employer's agent in the pursuit of business opportunities on the employer's behalf. *Id.* (citing *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 513 (1942); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200-01 (Tex. 2002)). In such cases, the employee has a duty to act primarily for the benefit of his employer in matters connected with his employment and not to compete with his employer on his own account. *Abetter Trucking Co. v. Arzipe*, 113 S.W.3d 503, 512 (Tex. App. – Houston [1st Dist.] 2003, no pet.). It constitutes a breach of fiduciary duty for an employee, while employed by his employer, to use his position to gain a business opportunity belonging to the employer. *See, e.g., Bray v. Squires*, 702 S.W.2d 266, 270 (Tex. App. – Houston [1st Dist.] 1985, no writ). Additionally, where a third party, such as Fenderson, knowingly participates in the breach of a fiduciary duty, the third party becomes a joint tortfeasor with the fiduciary and is liable as such. *Darocy v. Abildtrup*, 345 S.W.3d 129, 137 (Tex. App. – Dallas 2011, no pet.).

Here, Griffin admitted that he was employed as a salesman for Plaintiffs, that he was Plaintiffs' agent during the term of his employment, and that he owed Plaintiffs

fiduciary duties, including the duties of loyalty, not to compete against Plaintiffs, and not to usurp Plaintiffs' corporate opportunities. Plf. MSJ App. at 24, Griffin Adm. Nos. 41-43. Griffin also admitted that he breached his fiduciary duties to Plaintiffs by competing against them while he was still employed by Plaintiffs and by usurping Plaintiffs' corporate opportunities. *Id.* at 24-25, Griffin Adm. Nos. 44-47. Finally, Griffin admitted that his breaches of fiduciary duties directly and proximately caused Plaintiffs' injuries and benefitted himself and Fenderson. *Id.* at 25, Griffin Adm. Nos. 48-49.

Fenderson admitted that he knew Griffin was a salesman for and agent of Plaintiffs when Griffin was employed by Plaintiffs and that Griffin owed fiduciary duties to Plaintiffs. Plf. MSJ App. at 59-60, Fenderson Adm. Nos. 42, 44, & 46. Fenderson also admitted that he aided and abetted Griffin in usurping corporate opportunities from Plaintiffs, competing against Plaintiffs while Griffin was still employed by Plaintiffs, and breaching fiduciary duties to Plaintiffs which directly and proximately caused injuries to Plaintiffs and benefitted Griffin and himself. *Id.* at 60-61, Fenderson Adm. Nos. 47-52.

Defendants also admitted that they performed automotive repair work for Kevin Eads, Jerry Young, and Cody Payne during the time in which Griffin was employed by Plaintiffs in competition with Plaintiffs and without disclosing the opportunity to perform such work to Plaintiffs. *Id.* at 33-36, Griffin Adm. Nos. 84-86, 89-91, & 94-96; *id.* at 69-72, Fenderson Adm. Nos. 87-89, 92-94, & 97-99. Kevin Eads paid Defendants

$2,500 for the automotive repair work, *id.* at 33-34, Griffin Adm. Nos. 87-88; *id.* at 69, Fenderson Adm. Nos. 90-91; Jerry Young paid Defendants $9,200, *id.* at 35, Griffin Adm. Nos. 92-93; *id.* at 71, Fenderson Adm. Nos. 95-96; and Cody Payne paid Defendants $3,000, *id.* at 36, Griffin Adm. Nos. 97-98; *id.* at 69, Fenderson Adm. Nos. 100-01. The sum of those three payment amounts is $14,700.

Considering Defendants' admissions and their failure to respond to Plaintiffs' motion, the Court finds no genuine issue of material fact as to whether Plaintiffs are entitled to summary judgment on their claims for breach of fiduciary duty against Griffin and aiding and abetting breach of fiduciary duty against Fenderson. Plaintiffs also have established beyond peradventure the amount of their damages resulting from Griffin's breach of fiduciary duty and Fenderson's aiding an abetting of that breach is $14,700.

Conversion

Plaintiffs may establish conversion by proving: (1) they owned, had legal possession of, or were entitled to possession of certain property and (2) Defendants assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with Plaintiff's rights. *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (citing *Waisath v. Lack's Stores*, 474 S.W.2d 444, 447 (Tex. 1971)).[3] In this case, Griffin admitted that he used

_____

[3] "Demand" and "refusal" are sometimes identified as additional elements of a conversion claim, especially when the conversion claim arises from a bailment relationship. *See, e.g., Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 759 (Tex. App. – Dallas 2008, no pet.) (identifying two additional elements of conversion claim as "the

one of Plaintiffs' business trucks, without Plaintiffs' authorization, for his own purposes in promoting Defendants' competing enterprise, Coyote Engines, and that such unauthorized use resulted in injuries to Plaintiffs. Plf. MSJ App. at 26-27, Griffin Adm. Nos. 51-57. Fenderson also admitted that he aided and abetted Griffin's unauthorized use of Plaintiffs' truck for Coyote Engines. *Id*. at 62-63, Fenderson Adm. Nos. 54-60.

Defendants have thus admitted all of the elements of Plaintiffs' claim for conversion with respect to their use of Plaintiffs' truck. Plaintiffs are entitled to summary judgment on their conversion claim.

<u>Defendants' Affirmative Defenses and Counterclaims</u>

Plaintiffs are likewise entitled to summary judgment on Defendants' affirmative defenses and counterclaims. On these matters, Plaintiffs do not have the burden of proof and need only identify the portions of the pleadings and discovery that demonstrate the absence of a genuine issue of material fact for trial.

Plaintiffs have met this burden as to Defendants' affirmative defenses by highlighting that there is no evidence that any of the Defendants' statements are subject to a common law or state or federal constitutional privilege. Plaintiffs further rely on Defendants' deemed admissions that (1) Plaintiffs do not have unclean hands; (2) Plaintiffs' injuries were caused by Defendants and not by their own conduct and

---

plaintiff demanded return of the property; and ... the defendant refused to return the property"). However, the elements of demand and refusal are not required if other evidence establishes an act of conversion. *See Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 457 (Tex. App. – Eastland 2006, pet. denied).

Plaintiffs' recovery should not be reduced because of Plaintiffs' conduct; (3) Plaintiffs took all possible action to mitigate their damages; (4) Plaintiffs never ratified Defendants' conduct or waived their claims against Defendants; (5) Plaintiffs have standing to assert their claims; (6) Defendants' statements were not substantially true when they were made; (7) none of the statements made were non-actionable opinion or hyperbole; (8) Plaintiffs are not "libel-proof;" (9) Plaintiffs did not abandon any opportunities that Defendants usurped from Plaintiffs; and (10) Defendants' actions were not justified. Plf. MSJ App. at 28-30, Griffin Adm. Nos. 62-72; *id.* at 64-66, Fenderson Adm. Nos. 65-75.[4] These admissions negate Defendants' assertion of their various affirmative defenses.

With regard to Defendants' counterclaim for tortious interference with their alleged prospective business relationship with Hackler Transmissions ("Hackler"), an automotive parts supplier, Plaintiffs' motion points to Defendants' deemed admissions that (1) Plaintiffs never made any false statements about Defendants to Hackler, *id.* at 31, Griffin Adm. No. 74; *id.* at 67, Fenderson Adm. No. 77; (2) Defendants were not in the process of entering into a business relationship with Hackler, *id.* at 31, Griffin Adm. No. 75; *id.* at 67, Fenderson Adm. No. 78; (3) Plaintiffs did not interfere with Defendants' relationship or prospective relationship with Hackler, *id.* at 31, Griffin

---

[4] Defendants' first affirmative defense of "failure to state a claim," Def. Ans. [Dkt. No. 14] at 8, is too vague and insufficiently pled to constitute an affirmative defense. *See E.E.O.C. v. Courtesy Bldg. Serv., Inc.*, No. 3:10-CV-1911-D, 2011 WL 208408, at *3 (N.D. Tex. Jan. 21, 2011) (granting motion to strike as to affirmative defense of "failure to state a claim" because defense is so broad that it is unclear merely from an assertion of the name of the defense what the nature of the defense may be).

Adm. No. 76; *id*. at 67, Fenderson Adm. No. 79; (4) Plaintiffs' conduct with respect to Hackler and Defendants was not independently tortious or unlawful, *id*. at 31, Griffin Adm. No. 77; *id*. at 67, Fenderson Adm. No. 80; and (5) Defendants suffered no damages from the loss of a business relationship with Hackler, *id*. at 32, Griffin Adm. No. 78; *id*. at 68, Fenderson Adm. No. 81. These admissions "conclusively establish" facts that are fatal to Defendants' counterclaim for tortious interference with a prospective business relationship. *See, e.g., Faucette v. Chantos*, 322 S.W.3d 901, 914, (Tex. App. – Hous. [14 Dist.] 2010, no pet.) (identifying essential elements of claims for tortious interference with a prospective business relationship as "(1) a reasonable probability that the parties would have entered into a contractual relationship; (2) an 'independently tortious or unlawful' act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference").

Other deemed admissions by Griffin similarly establish facts that are fatal to his remaining claims for breach of contract, quantum meruit, and theft of services as well as his request for an accounting – all of which arise from the allegation that Plaintiffs withheld commissions due to Griffin after his termination. In particular, Griffin admitted that Plaintiffs timely paid him all the commissions to which he was entitled and all the compensation that he was owed. *Id*. at 30, Griffin Adm. No. 73; *id*.

at 32, Griffin Adm. No. 82. Griffin further admits that Plaintiffs did not "steal" any services from him. *Id.* at 33, Griffin Adm. No. 83. These admissions establish that Plaintiffs did not wrongfully withhold any commission Griffin earned as a result of services he performed on Plaintiffs' behalf. *See* TEX. CIV. PRAC. & REM. CODE § 134.002(2) (Vernon 2011) (person liable for damages under Texas Theft Liability Act only if services were "unlawfully obtained"); *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769 (Tex. App. – Dallas 2005, pet. denied) (essential elements of a breach of contract claim include defendant's breach and damage to the plaintiff resulting from the breach); *Vortt Exploration Co. v. Chevron USA, Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) (quantum meruit is equitable remedy available when non payment for services rendered would result in an unjust enrichment to the party benefitted by the work); *Michael v. Dyke*, 41 S.W.3d 746, 754 (Tex. App. – Corpus Christi 2001, no pet.), (where party sought accounting as form of remedy, not separate claim for relief, issue of entitlement to accounting would not be reached unless it is first determined plaintiff is owed at least some damages under breach of contract claim), *abrogated on other grounds as recognized by Richardson v. Wells Fargo, N.A.*, 873 F. Supp. 2d 800, 817 (N.D. Tex. 2012).

Defendants have failed to submit or identify any evidence in the record that rebuts Plaintiffs' arguments and evidence and, thus, have failed to raise a genuine issue of material fact on any of their affirmative defenses or counterclaims. Plaintiffs are entitled to summary judgment on all of Defendants' affirmative defenses and

counterclaims. *See Cushingberry v. Airtran Airways, Inc.*, No. 3:04-CV-2301-M, 2005 WL 1875429, at *1 (N.D. Tex. Aug. 9, 2005) (party entitled to summary judgment based on undisputed evidence in the form of deemed admissions).

## Conclusion

Plaintiffs' Motion for Summary Judgment [Dkt. No. 25] is GRANTED in part and DENIED in part. Plaintiffs' motion is GRANTED with respect to their claims for defamation, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conversion, as well as all of the affirmative defenses and counterclaims asserted by Defendants. In all other respects, Plaintiffs' motion is DENIED.

An appropriate judgment will issue.

SO ORDERED.

Dated: March 12, 2013.


**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**